J-A33019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| MICHELE WANKO | |
| Appellee | No. 1015 EDA 2014 |

Appeal from the Order entered March 7, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0005138-2013

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED MAY 04, 2016**

The Commonwealth appeals from the order the Court of Common Pleas of Delaware County entered on March 7, 2014, dismissing the charge of aggravated assault against Appellee, Michele Wanko, based upon a lack of *prima facie* evidence of *mens rea*.  We reverse.

The factual and procedural background of this matter can be summarized as follows.  In the early morning hours of April 27, 2013, after some drinking, Appellee, Michele Wanko, and her husband were in the basement of their house where husband was showing Appellee how to handle guns.  In particular, he was showing Appellee how to arm and operate a number of handguns, and in particular, how to rack the slide of a

_____

[*] Retired Senior Judge assigned to the Superior Court.

semi-automatic handgun. After he showed Appellee how to do that with three handguns, Appellee picked up a fourth handgun. Appellee was standing in front of her husband and pointing the gun in the direction of his chest. She racked the handgun and claimed to pull the trigger accidentally. A bullet discharged striking her husband in the chest killing him.

Following the shooting, a criminal complaint charging involuntary manslaughter and aggravated assault was filed against Appellee. On August 14, 2013, a preliminary hearing was held before a Magisterial District Judge (MDJ). At the hearing, the Commonwealth moved to amend the criminal complaint to include the additional charges of third degree murder and possession of an instrument of crime. The MDJ granted the Commonwealth's motion. After hearing the evidence against Appellee, the MDJ dismissed the third degree murder charge, but held Appellee for trial on the remaining charges.

On September 11, 2013, Appellee was arraigned before the trial court, at which time a criminal information charging Appellee with aggravated assault, involuntary manslaughter, and possession of an instrument of crime was filed against her. On September 16, 2013, Appellee filed a motion to enlarge time to file a pretrial motion and a motion to modify conditions of release.

On September 19, 2013, the Commonwealth filed a second criminal complaint charging Appellee with third degree murder in connection with the same events that gave rise to the initial prosecution. On October 1, 2013,

the Commonwealth filed a petition with the Delaware County President Judge to assign the matter to a different MDJ. The next day, the President Judge directed Appellee to file a response to the Commonwealth's request for reassignment. On October 4, 2013, Appellee filed a motion to stay the proceedings and a petition for writ of habeas corpus in connection with the second criminal complaint charging Appellee with third degree murder.

On October 8, 2013, a hearing was held before the trial court to address Appellee's then outstanding motions, with the exclusion of those pending before the President Judge. At the hearing, the parties agreed to have the trial court preside over the preliminary hearing on the second criminal complaint as well as all other outstanding motions.[1]

A preliminary hearing before the trial court was held on October 24, 2013. On November 27, 2013, the trial court found the Commonwealth failed to establish a *prima facie* case of third degree murder against the Appellee. On December 11, 2013, the Commonwealth appealed to this Court, but subsequently discontinued that appeal.

On December 27, 2013, Appellee filed a habeas corpus motion seeking dismissal of all charges against her. The trial court held a hearing on Appellee's motion on March 6, 2014. On March 7, 2014, the trial court

---

[1] At the hearing, Appellee withdrew her motion to stay the proceedings and the motion to modify conditions of release. The Commonwealth, on the other hand, withdrew its petition seeking to have a different MDJ hear the matter.

granted Appellee's request with regard to the aggravated assault charge, but refused to dismiss the involuntary manslaughter and possession of an instrument charges. This appeal followed. Both the trial court and the Commonwealth complied with Pa.R.A.P. 1925.

The Commonwealth argues the trial court erred in concluding the Commonwealth did not present sufficient evidence to support a *prima facie* case of aggravated assault against Appellee. Appellee argues the trial court did not err in making such a finding. In addition, Appellee argues the Commonwealth waived the sufficiency issue by conceding on three separate occasions that the trial court's conclusion was correct.

We first must address the waiver issue before we can entertain the merits of this matter. As noted, Appellee argues that the Commonwealth waived its sufficiency of the evidence issue by conceding the trial court properly concluded there was insufficient evidence of *mens rea* for the aggravated assault charge. In other words, Appellee argues that the Commonwealth is estopped from arguing insufficiency of the evidence when on three separate occasions the Commonwealth conceded that the evidence was insufficient. Appellee, however, provides no legal authority under which we could find waiver based on estoppel grounds. Failure to do so is fatal to Appellee's claim. ***See***, ***e.g.***, Pa.R.A.P. 2119(a); ***Commonwealth v. Sherwood***, 982 A.2d 483, 496 (Pa. 2009) ("By failing to provide any

discussion of the claim with citation to relevant authority, [a]ppellant has waived review of [his] claim.").[2]

Nonetheless, we have reviewed the three instances mentioned by the Appellee as evidence of the Commonwealth's concession that the trial court was correct in its ruling. Upon review, we conclude the record does not support Appellee's contentions. Given that third degree murder and aggravated assault based on recklessness share the same *mens rea*,[3] and that the trial court did not find *mens rea* for a third degree murder charge, it

_____

[2] Appellee also argues the Commonwealth waived any claim to the dismissal of the third degree murder charge (and by implication, the aggravated assault charge) by failing to file a Rule 1925(b) statement and then discontinuing the appeal filed in connection with the dismissal of the third degree murder charge. Appellee provides no explanation how one could waive his or her claims on appeal if he or she has no right to an appeal on those claims. Indeed, nowhere does Appellee acknowledge that dismissal of criminal charges at a preliminary hearing is not appealable to this Court. **Commonwealth v. Hetherington**, 331 A.2d 205, 208 (Pa. 1975). Appellee also fails to note that the Commonwealth is not bound by an MDJ decision dismissing criminal charges. Indeed, the Commonwealth may seek a "review by another judicial officer, empowered to hold preliminary hearings, provided that it is done within the period prescribed by the statute of limitations for the charges in question." **Id. See also** Pa.R.Crim.P. 544. On the other hand, an order dismissing charges after a habeas corpus hearing is appealable to this Court. **See**, **e.g.**, **Commonwealth v. Carbo**, 822 A.2d 60, 68 (Pa. Super. 2003).

[3] More precisely, where the Commonwealth's theory of the case for aggravated assault is based on defendant's recklessness, the Commonwealth must show that assailant's recklessness rose to the level of malice. **Commonwealth v. Kling**, 731 A.2d 145, 147-48 (Pa. Super. 1999). The malice that is required for aggravated assault is the same as that required for third degree murder. **Id**.

is correct the trial court could not logically and legally conclude there was *mens rea* for an aggravated assault charge.[4]   The Commonwealth acknowledges this much, but this acknowledgment is far from conceding the trial court's ruling upon the evidence presented was correct.   Indeed, the record shows that the Commonwealth not only disagreed with the trial court's premise, but also made it clear that it would appeal the ruling.   N.T. Hearing, 3/6/14 at 116.   Thus, we find the record does not support waiver.

Proceeding now to the merits of this matter, preliminarily we need to address the proper standard and scope of appellate review.   The Commonwealth argues the trial court applied improper standards in reaching its conclusions.   We agree.

The trial court, quoting **Commonwealth v. Karlson**, 674 A.2d 249 (Pa. Super. 1996), stated that the decision to grant or deny a petition for writ of habeas corpus is reviewed for manifest abuse of discretion.   Trial Court Opinion, 12/31/2014, at 9-10.   Later on, however, quoting **Commonwealth v. Marti**, 779 A.2d 1177 (Pa. Super. 2001), the court stated the very same decision is reviewed for error of law.   **Id.**   A review of

---

[4] **See Commonwealth v. Hickson**, 586 A.2d 393 (Pa. Super. 1990) (malice is a constituent element of both third degree murder and aggravated assault; jury's finding of not guilty for third degree murder, *i.e.*, a malicious act, precludes a second trial for aggravated assault).

caselaw from this Court does indeed appear to be inconsistent.[5]  As such, we will rely on the standard as set forth by our Supreme Court.  In *Commonwealth v. Karetny* 880 A.2d 505 (Pa. 2005), the Supreme Court noted:

> The Superior Court panel majority stated that it would reverse the quashal order only if the trial court had abused its discretion and then ultimately concluded that there was no abuse of discretion.  *See* [*Commonwealth v. Karetny*, 837 A.2d 474, 477 n. 2 (Pa. Super. 2003) (*en banc*)].  However, it is settled that the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary.  *See* [*Commonwealth v. Huggins*, 836 A.2d at 862, 865 (Pa. 2003)].  Indeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime. The panel majority misapprehended the governing standard in holding otherwise.

_____

[5] It appears a few panels of this Court relied on *Karlson*, which ultimately relied on caselaw from the 1950s pertaining to habeas corpus proceedings (post-conviction challenges), which were reviewed for abuse of discretion. *See Commonwealth ex rel. Kitchen v. Burke*, 107 A.2d 193, 195 (Pa. Super. 1954); *Commonwealth ex rel. Richter v. Burke*, 103 A.2d 293, 295 (Pa. Super. 1953).  Ordinarily, these challenges now fall within the purview of the Post-Conviction Relief Act.  *See*, *e.g.*, *Commonwealth v. Taylor*, 65 A.3d 462, 465-66 (Pa. Super. 2013).  At issue here is the review of a pretrial disposition finding insufficient evidence to prove *mens rea*. These rulings are reviewed for errors of law, not abuse of discretion. *See Commonwealth v. Karetny*, 880 A.2d 505, 528-29 (Pa. 2005). It should be noted that *Karlson* is not the only decision in which we misstated the proper standard of review.  *See*, *e.g.*, *Commonwealth v. Saunders,* 691 A.2d 946 (Pa. Super. 1997), which is still relied upon by panels of this Court even after *Karetny*.  *See, e.g., Commonwealth v. Williams*, 911 A.2d 548, 443 (Pa. Super. 2006).

*Id.* at 528. ***See also Commonwealth v. Santos***, 876 A.2d 360 (Pa. 2005):

> In reviewing a trial court's order granting a defendant's petition for writ of habeas corpus, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error. A trial court may grant a defendant's petition for writ [of] habeas corpus where the Commonwealth has failed to present a *prima facie* case against the defendant. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. Notably, the Commonwealth does not have to prove the defendant's guilt beyond a reasonable doubt. Further, the evidence must be considered in the light most favorable to the Commonwealth so that inferences that would support a guilty verdict are given effect.

*Id.* at 363 (citations and quotation marks omitted).

At issue here is whether the Commonwealth produced sufficient evidence to show Appellee acted with the required *mens rea* in connection with the aggravated assault charge. A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). As noted above, where the Commonwealth's theory of the case for aggravated assault is based on recklessness, the Commonwealth must show that assailant's recklessness rose to the level of malice. ***See Kling***, 731 A.2d at 147-48. Malice "comprehends not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of

consequences, and a mind regardless of social duty, *although a particular person may not be intended to be injured*."[6]  **Santos**, 876 A.2d at 363 (emphasis in original).  In **Commonwealth v. Payne**, 868 A.2d 1257 (Pa. Super. 2005), we stated:

> [U]nder our caselaw, we have extraordinarily well established precedent stating that if a gun discharges and the bullet strikes the victim, the intentional act of pointing the gun and aiming it at a vital part of the human body creates the presumption of malice. This is true regardless of whether the shooter was unaware the gun was loaded, regardless of whether the shooter only meant to "scare" the victim, regardless of whether the gun accidentally discharged, regardless of whether the shooter and victim were good friends.

**Id.** at 1261 (internal citations omitted).

Here, the record shows, that Appellee "'racked' the firearm's slide, pointed the weapon in the direction of the decedent's torso, pulled the

---

[6] Based on its reading of **Commonwealth v. Bruce**, 916 A.2d 657 (Pa. Super. 2007), the trial court seems to have equated "malice" with intentional killing. In **Bruce**, we stated, "A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill." **Id.** at 664 (quoting **Kling**, 731 A.2d at 148).  It should be clear, however, that desire to injure or kill is not coterminous with intent to injure or kill.  This difference is particularly relevant in this matter.  Third degree murder does not require intent to kill. **Santos**, 876 A.2d at 363-64.  "Indeed, our courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for "an unjustified and extremely high risk that his actions *might* cause death or serious bodily harm."  **Id.** at 364 (emphasis in original).  Thus, the trial court erred to the extent it interpreted Section 2702 to require the Commonwealth to prove Appellee acted with intent to injure or kill.  **See Santos**, 876 A.2d at 362, 364 (disagreeing with our Court to the extent we stated that malice involves a state of mind that is nearly equivalent to purposeful or knowing homicide).

handgun's trigger, and thus shot and killed her husband." Trial Court Opinion, 12/31/14, at 21 (citing, *inter alia*, the Commonwealth's Pa.R.A.P. 1925(b) statement).[7]  This evidence is sufficient to show Appellee acted with the required *mens rea*.[8]  **See Payne**, **supra**.  The trial court, therefore, erred in concluding otherwise.

The thrust of the trial court's decision is that the Commonwealth failed to show Appellee acted with malice, in light of the circumstances of the case.  After conceding that "a presumption of malice **can** flow from a defendant's use of a deadly weapon to a vital part of the human body," Trial Court Opinion, 12/31/14, at 21 (emphasis in original), the trial court commented as follows: "An inference of malice cannot be accepted in a vacuum.  The law infers or presumes from the use of a deadly weapon, **in the absence of circumstances of explanation or mitigation . . . .**"  **Id.**

---

[7] The trial court does not have issues with the Commonwealth's representation of the facts.  Rather, the trial court disagrees with the Commonwealth on how the evidence should be viewed and weighed, and ultimately, they disagree on the legal conclusions to be drawn from said evidence.  **See** Trial Court Opinion, 12/31/14, at 21 ("Although acknowledging to an appreciable extent the accuracy of this factual recitation of the Commonwealth, this court believes even in the instant matter's present procedural posture such a legal argument is just overly narrow.").

[8] As noted above, at this stage, the inquiry is whether the Commonwealth has made a *prima facie* case against Appellee.  Based on our review of the facts and the law, we concluded that the Commonwealth did make a *prima facie* case against Appellee.  We express no opinion as to whether the evidence is sufficient to prove *mens rea* beyond a reasonable doubt.

(quoting **Commonwealth v. Seibert**, 622 A.2d 361, 366 (Pa. Super. 1993) (emphasis in original)).  This statement is problematic.

First, the procedural context of the quoted language from **Seibert** is different from the procedural context of the instant matter.  **Seibert** dealt with a challenge to the sufficiency of the evidence at trial.  Here, we are dealing with sufficiency of the evidence at pre-trial proceedings.  The standards of proof are different.  **See**, **e.g.**, **Marti**, 779 A.2d at 1180 ("[T]he Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged.").  Thus, reliance on **Seibert** is misplaced.

The trial court, however, also erred for another reason.  By considering Appellee's explanations and mitigating circumstances,[9] the trial court misapplied well-established standards requiring the court to give effect to a

_____

[9] For instance, the trial court, *inter alia*, noted: (i) Appellee did not lie to the investigators regarding the shooting, Trial Court Opinion, 12/31/2014, at 21 n.40; (ii) victim, a firearm enthusiast, was directing the displaying of the firearms operation; **id.** at 23, (iii) Appellee was a neophyte, **id**.; (iv) Appellee relied on her husband's firearm experience and proficiency, **id.** at 24, (v) the investigating officer stated there was no evidence suggesting Appellee intended to harm victim, **id.**; (vi) Appellee did not admit she deliberately aimed the firearm at her husband, **id.** at 26; and (vii) Appellee "did not engage in assertive and purposeful actions of a threatening and/or menacing nature directed at the victim[.]" **Id.** at 28.  Accordingly, the trial court concluded, "the evidence most certainly points to that of a horrific accident," **id.** at 24, which falls below the requisite standard of malice. **Id.** at 29.

reasonable inference supporting a verdict of guilt and reading the evidence in the light most favorable to the Commonwealth. Indeed, the trial court here did the opposite: it drew inferences from the evidence supporting a not guilty verdict and read the evidence in the light most favorable to the defense. This was error. *Marti*, 779 A.2d at 1180 ("Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.") (citation and quotation marks omitted).

Similarly, by considering Appellee's explanations and mitigating circumstances noted above, the trial court improperly engaged in a weight and credibility assessment. It is well-established, however, that the "weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense." *Id*.[10]

While a jury might well not find Appellee guilty of the offense charged, it is not for us or the trial court to decide guilt at this stage. At this stage, the Commonwealth must only present evidence to establish sufficient probable cause Appellee committed the crime charged. Here, had the trial

---

[10] Pennsylvania courts have used the terms "*prima facie*" and sufficient "probable cause" interchangeably in the context of modern preliminary hearings. **Commonwealth v. Ricker**, 120 A.3d 349, 355 n.1 (Pa. Super. 2015).

court applied the correct standard and the proper definition of malice based on the trial court's own detailed recitation of the facts presented, *see* Trial Court Opinion, 12/13/15, at 12-19, it should have denied Appellee's motion seeking dismissal of the aggravated assault charge. Based on the foregoing, the order of the trial court is reversed, and the charge of aggravated assault is reinstated.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2016